UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ARTHUR JENKINS,<br><br>Petitioner,<br><br>v.<br><br>R.C. JOHNSON, Warden,<br><br>Respondent. | Case No.: 21cv1653-GPC(AGS)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner James Arthur Jenkins ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on September 21, 2021. (Dkt. No. 1.) On January 19, 2022, Respondent filed an answer and notice of lodgment of state court records. (Dkt. Nos. 6, 7.) Magistrate Judge Andrew G. Schopler filed a report and recommendation ("R&R") denying the petition for writ of habeas corpus on August 30, 2022. (Dkt. No. 8.) No objections were filed. For the reasons discussed below, the Court ADOPTS the R&R and DENIES and DISMISSES the petition for writ of habeas corpus and also DENIES a certificate of appealability.

**Procedural Background**

On July 1, 2019, a jury found Petitioner guilty of first degree murder in violation of California Penal Code ("Penal Code") section 187(a) and attempted robbery in violation of Penal Code sections 664 and 221. (Dkt. No. 7-2, Lodgment 2, CT 322-23.) The jury

1

found that both crimes were committed with the personal use of a deadly and dangerous weapon in violation of Penal Code sections 1192.7(c)(23) and 12022(b)(1). (*Id.*) The jury also found that Petitioner personally inflicted great bodily injury under Penal Code sections 1192.7(c)(8) and 12022.7(a) on the attempted robbery conviction. (*Id.*) Petitioner admitted to a serious felony prior conviction pursuant to Penal Code sections 667(a)(1), 668 and 1192.7(c) and strike prior conviction pursuant to Penal Code sections 667(b)-(i) and 1170.42. (*Id.,* CT 430.)

On September 19, 2019, the trial court sentenced Petitioner to six years plus fifty years to life in prison. (*Id.*, CT 363-67.) Petitioner appealed his conviction on a number of issues. (Dkt. No. 7-3, Lodgment 3.) Petitioner also filed a supplemental brief arguing, *inter alia*, that he qualified for and has a constitutional[1] right to pre-trial mental health diversion. (Dkt. No. 7-4, Lodgment 4.) On July 16, 2020, the Court of Appeals affirmed the conviction, vacated the sentence and "remanded to allow the trial court to exercise its discretion and determine whether to strike the serious felony enhancement." (Dkt. No. 7-7, Lodgment No. 7 at 24.[2]) On the mental health diversion claim, the court of appeal, applying California law, held that because the preliminary hearing took place on January 30, 2019, trial began on June 7, 2019, and sentencing occurred on September 13, 2019, Petitioner was statutorily ineligible for mental health diversion because he was charged with murder.[3] (Dkt. No. 7-7, Lodgment 7 at 19-20.)

Petitioner filed a petition for review with the California Supreme Court arguing, *inter alia*, that his equal protection rights were violated under the California Constitution and the United States Constitution because other defendants that were incarcerated before January 1, 2019 and sentenced before or after January 1, 2019 were entitled to mental

---

[1] Petitioner did not state whether he sought relief under the state or federal constitution. (Dkt. No. 7-4, Lodgment 4.)
[2] Page numbers are based on the CM/ECF pagination
[3] Effective January 1, 2019, Penal Code section 1001.36, the mental health diversion statute, was amended and the charge of murder became ineligible for diversion.

health diversion and he was not. (Dkt. No. 7-8, Lodgment 8 at 7.) On September 23, 2020, the California Supreme Court denied the petition for review without explanation. (Dkt. No. 7-9, Lodgment 9.)

## Factual Background

This Court gives deference to state court findings of fact and presume them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal's July 16, 2020 opinion.

> In the early morning hours of August 22, 2018, the Victim was visiting his homeless friend Keisha at an encampment on University Avenue in San Diego. Two other homeless men, Calvin and David, were also at the encampment. At some point, Jenkins arrived. Keisha described Jenkins, who was also homeless, as a "bully." When Jenkins arrived, the Victim left. Keisha described the Victim's demeanor as "nervous" and Jenkins's demeanor as "serious." As Jenkins followed the Victim, Keisha was packing her belongings when she heard a "thumping noise." She did not see what had happened, but thought that Jenkins had hit the Victim.
>
> Calvin also saw the Victim leave as soon as Jenkins arrived. Jenkins followed the Victim and tried to grab him, as the Victim said "'I'm not going to give you anything.'" As Jenkins caught up to the Victim, Calvin saw Jenkins's arm raised over him, and then saw the Victim on the ground with blood around his head. Jenkins then went through the Victim's pockets while asking "[W]here's the jewelry at? Where's the jewelry at?" Calvin called the paramedics as soon as Jenkins left. He explained that the Victim and Jenkins knew each other and described the Victim as a person who stole items from stores and then sold them to make money.
>
> A responding police officer found the Victim on the ground with a large amount of blood around his head. He appeared disoriented and could not answer basic questions. A trauma surgeon noted that the Victim had a head wound. A scan of the Victim's head revealed "a large, deep penetrating wound to the brain."

> Another trauma surgeon stated that the stabbing object went into a thick part of the Victim's skull, and that it took a lot of force to get through the bone. He commented that the Victim's injury was only the second time in 20 years he had seen a stab wound to the head that penetrated deeply enough to kill a person. Both surgeons opined that a knife likely caused the Victim's brain injury. The Victim underwent surgery, but did not improve. After the Victim's family decided to remove life support, the Victim died very quickly.
>
> Based on information provided by Keisha and Calvin, police identified Jenkins as possibly being the assailant. They prepared a photographic line-up that included Jenkins's photograph. Both Keisha and Calvin identified Jenkins as the assailant.

(Dkt. No. 7-7, Lodgment No. 7 at 3-4; *see also People v. Jenkins*, 2020 WL 4007320, at *1-2 (Ct. App. July 16, 2020).)

## Discussion

**A.     Standard of Review of Magistrate Judge's Report and Recommendation**

In reviewing a magistrate judge's report and recommendation, a district court "must make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed."); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise"). Here, no objection was filed by Petitioner. Therefore, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *See* 28 U.S.C. § 636(b)(1)(C).

**B.     Standard of Review**

The petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Under this clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 409, 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (unreasonable application must be objectively unreasonable). In other words, relief is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, 427 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This is an extraordinarily deferential standard of review. *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the

United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer*, 538 U.S. at 71-72.

The analysis of the state court's decision is "significantly impeded" when, as here, the California Supreme Court did not provide a reasoned decision. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citing *Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000)). Thus, "[w]e 'cannot perform our evaluation under the models suggested by Justice O'Connor in *Williams*,' because we have 'no basis other than the record for knowing whether a state court correctly identified the governing principle or was extending the principle into a new context." *Id.* (quoting *Delgado*, 223 F.3d at 982). *Delgado* instructs us to perform "an independent review of the record" to determine whether the state court decision was objectively unreasonable, and therefore, "[f]ederal habeas review is not *de novo*" in this instance. *Id.* (citing *Delgado*, 223 F.3d at 982). Independent review is "the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Id.* The Court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99-100 (presumption may be rebutted when there is "reason to think some other explanation for the state court's decision is likely.").

Under these circumstances, courts are directed to "vigilantly search for an interpretation of the state law question which would avoid attributing constitutional error to the state court. But we stop short of adopting an implausible or strained interpretation." *Himes,* 336 F.3d at 854; *see Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) ("a habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.").

**C.   Analysis**

Petitioner argues that his conviction is in violation of the equal protection clause

pursuant to Article One, Section Seven of the California Constitution and the equal protection clause pursuant to the Fourteenth Amendment of the United States Constitution. (Dkt. No. 1, Pet. at 6.) He contends that he qualified for mental health diversion under Penal Code sections 1001.36 and 1001.35 because he was incarcerated and his case was still pending before the amendment excluding his eligibility on January 1, 2019. (*Id.*) Respondent argues that Petitioner fails to state a cognizable claim on federal habeas review. (Dkt. No. 6-1 at 10-12.)

Penal Code section 1001.36, enacted and effective on June 27, 2018, authorizes pretrial diversion for defendants with qualifying mental disorders. *People v. Frahs*, 9 Cal. 5th 618, 626-27 (2020). "'[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." Cal. Penal Code § 1001.36(c). If the trial court grants pretrial diversion and the defendant performs "satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." *Id.* § 1001.36(e). However, section 1001.36 was amended, effective January 1, 2019, providing that those defendants charged with certain offenses, including murder, are categorically ineligible for diversion. *Id.* § 1001.36(b)(2)(A).

First, Petitioner's challenge under the California Constitution is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780, (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.")). A "federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (*per curiam*)). Habeas review is not available for errors of state law. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Therefore, Petitioner's claim challenging a conviction under the state constitution is not cognizable.

Second, Petitioner challenges his sentence pursuant to the equal protection clause under the United States Constitution which is a cognizable claim. Here, the California Supreme Court summarily denied the petition for review. (Dkt. No. 7-9, Lodgment No. 9.) Because of the California Supreme Court's summary denial, the Court conducts an independent review to determine whether the California Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. *See Himes*, 336 F.3d at 853; *Greene*, 288 F.3d at 1089.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To allege an equal protection claim, the plaintiff must establish either that he was discriminated against because of his membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or he was treated differently than similarly situated individuals without a rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("class of one" claim under the equal protection clause "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). Here, Petitioner appears to raise a "class of one" claim because he does not allege he was a member of a protected class.

"To succeed on his 'class of one' claim," the plaintiff must demonstrate that the defendant "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated [state prisoners], (3) without a rational basis." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). Class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

Here, Petitioner has not explained or shown how the California Supreme Court's decision denying his equal protection claim on mental health diversion was contrary to or

an unreasonable application of federal law. Specifically, he has not articulated the elements to support a class of one plaintiff or even examples of other instances where a defendant, who was arrested and incarcerated before January 1, 2019 but was tried and sentenced after January 1, 2019, was provided relief. His summary and conclusory claim that his equal protection right was violated does not warrant habeas relief. See *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do no warrant habeas relief.").

Moreover, in applying California law, the court of appeal held that because the preliminary hearing took place on January 30, 2019, trial began on June 7, 2019, and sentencing occurred on September 13, 2019, Petitioner was statutorily ineligible for mental health diversion because he was charged with murder. (Dkt. No. 7-7, Lodgment 7 at 19-20.) The court of appeal applied the 2019 amendment despite Petitioner's argument that he was eligible for mental health diversion because his appeal was not yet final. (*See* Dkt. No. 7-4, Lodgment No. 4 at 1.) While the Court may not rely on the court of appeal's decision under a § 2254(d) review, it is relevant to a habeas court's determination of whether a federal constitutional error occurred. *See e.g., Frantz v. Hazey*, 533 F.3d 724, 738-39 (9th Cir. 2008) (*en banc*) (holding that even if state court does not address the constitutional issue, where the reasoning of the state court is relevant to resolution of the constitutional issue, that reasoning is relevant to federal habeas court's consideration even under a de novo review). Here, the court of appeal held that Petitioner was not entitled to relief for mental health diversion under amended section 1001.36. Further, as the R&R notes, California courts have uniformly treated other defendants the same as Petitioner barring even those convicted and sentenced for murder before January 1, 2019. (Dkt. No. 8 at 3 (citing *People v. Burks*, No. D074599, 2020 WL 288129, at *1, 3 (Cal. Ct. App. Jan. 21, 2020) (applying January 1, 2019 amendment to defendant who was convicted of murder and sentenced before the effective date of the amendment); *People v. Bell*, No. D074669, 2020 WL 7395215, at *6 (Cal. Ct. App. Dec. 17, 2020) (*same*); *People v. McShane*, 36 Cal. App. 5th 245, 260–61 (2019) (*same*).)

Thus, the Court concludes the state court's denial of Petitioner's equal protection claim under the United States Constitution was neither contrary to, nor an unreasonable application of clearly established Supreme Court law and DENIES the petition for writ of habeas corpus.

### D. Certificate of Appealability

Under AEDPA, a state petitioner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). The district court may issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must show that "reasonable jurists would find the district's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, the Court DENIES a certificate of appealability.

### Conclusion

Based on the reasoning above, the Court ADOPTS the report and recommendation and DENIES and DISMISSES the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

IT IS SO ORDERED.

Dated: November 15, 2022

Hon. Gonzalo P. Curiel
United States District Judge